# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| OSCAR A. ALBERTO, | * |
| Plaintiff, | * |
| vs. | * CV 211-203 |
| PROGRESSIVE INSURANCE CO.; JEREMY C. JACKSON, | * |
| Defendants. | * |

## ORDER

Presently before the Court are two Motions to Dismiss and a Motion for Summary Judgment. See Dkt. Nos. 17, 24, 26. Defendants' Motion for Summary Judgment is **GRANTED** because this Court lacks subject matter jurisdiction. Dkt. No. 26. Because no subject matter jurisdiction exists, Defendants' Motions to Dismiss, Dkt. Nos. 17, 24, are **MOOT**.

## BACKGROUND

This case arises from a collision between two tractor trailers on December 1, 2009. Dkt. No. 1. One tractor trailer was driven by Plaintiff Alberto, the other by Defendant Jackson. Dkt. No. 1. Alberto seeks to recover damages he suffered as a result of that accident. Dkt. No. 1.

1

On November 30, 2011, Alberto filed this suit in federal court. Dkt. No. 1. After a substantial delay, Alberto perfected service on Defendant Jackson in Jacksonville, Florida. Dkt. No. 38. At the time of the collision, Jackson provided a Georgia address in Tattnall County as his home. However, Defendants claim that, since the accident, Jackson has moved and taken up residence in Jacksonville, Florida and is now a Florida citizen. See Dkt. No. 26.

The primary motivation for this move was Jackson's separation from his wife. At the final hearing for their divorce proceeding on July 18, 2011, Jackson gave the following testimony. He testified that he was currently "liv[ing] in Jacksonville, Florida, on [his] mom and dad's property." Dkt. No. 40, 16:3-6. He stated that he was living in a "camper" on their property and paying rent to his parents. Dkt. No. 40, 16:3-6, 36:20-25. He was commuting from Jacksonville to attend school in Savannah, Georgia. Dkt. No. 40, 24:19-24. Jackson did this because he could not receive in-state tuition until he had resided in Florida for a year. Dkt. No. 40, 16:5-12, 25:6-9. As of July 2011, Jackson had been living in Florida for less than a year and therefore was ineligible. Dkt. No. 40, 46:13-15. Jackson stated that he was seeing doctors for his medical condition in Jacksonville, Dkt. No. 30, 26:4-6, and that he had been hired for trucking jobs in Florida. Dkt. No. 40, 26:4-6,

2

43:19-20. Jackson also testified that, while he still had an account at Glennville Bank in Georgia, he did not use it for his regular expenses because he could not travel to Georgia to withdraw small amounts of money. Dkt. No. 40, 36:1-25. The testimony at the hearing also established that, as of July 2011, Jackson's marital home in Georgia was in foreclosure and arrangements had already been made for it to be sold. Dkt. No. 40, 3:12-24.

In an affidavit prepared in support of Defendants' Motion for Summary Judgment, Jackson swore that he resides in Jacksonville, Florida, that he has a Florida driver's license, that he works in Jacksonville, that he receives his mail in Jacksonville, that he no longer owns any real estate in Georgia, and that he uses his Florida address for his federal income tax forms. Dkt. No. 44, Ex. 1.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### DISCUSSION

In the present case, Alberto has not asserted a claim for relief under federal law. Dkt. No. 1. Based on the Complaint, the only basis for jurisdiction in this Court would be diversity jurisdiction. Dkt. No. 1. Under 28 U.S.C. § 1332, a federal court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the suit is between "citizens of different states." Jurisdiction under § 1332 requires complete diversity; every defendant must be a citizen of a different state than every plaintiff. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 580 n.2 (1999); Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005). Diversity jurisdiction is determined at the time the complaint was filed. Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957); Holston Inv., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1070 (11th Cir. 2012).

AO 72A
(Rev. 8/82)

Since Alberto is undisputedly a citizen of Florida, if Jackson was also a citizen of Florida as of November 30, 2011, then there is not complete diversity. As a result, this Court would have no power to hear the case. Alberto, as "the party invoking the court's jurisdiction[,] bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).

"A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Id. at 1257-58 (citations omitted). "Citizenship is the equivalent to 'domicile' for purposes of diversity jurisdiction." Id. at 1257. However, "[d]omicile is not synonymous with residence; one may temporarily reside in one location, yet retain a domicile in a previous residence." Molinos Valle Del Cibao, C. por A v. Lama, 633 F.3d 1330, 1341 (11th Cir. 2011).

Where, as here, a party asserts that his domicile has changed there must be "a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." McCormick, 293 F.3d at 1258. The real dispute in this case concerns the second prong, rather than the first. Jackson quite clearly was residing in Florida at the

5

time Alberto filed suit. While there is some uncertainty as to exactly when this move occurred, even the latest potential date for the move was well before November 2011, when the Complaint was filed. See Dkt. No. 26, Ex. 3, ¶ 3 (stating that Jackson "moved to Florida in late winter or early spring, 2010"); Dkt. No. 31 (swearing that, as of May 2010, Jackson had been "a resident of the State of Georgia, for six months prior"); Dkt. No. 40, 16:11-12 (asserting that he moved to Florida sometime around "Christmastime" 2010). Jackson was clearly physically living in Florida as of November 2011.

The more difficult question in this case concerns whether Jackson had the requisite intent to create a new domicile in Florida. After reviewing the evidence, this Court determines that Alberto did have the requisite intent and had become a citizen of Florida when the Complaint was filed.

"Determination of a party's domicile requires the 'totality of the circumstances' approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight." Slate v. Shell Oil Co., 444 F. Supp. 2d 1210, 1216 (N.D. Ala. 2006) (citations omitted). "Among numerous indicia considered are the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone

6

numbers are maintained and listed, where bank accounts are maintained, where places of business and employment are located, and where membership in local professional, civil, religious or social organizations are established." Id.

In the present case, Jackson has filed an affidavit stating that he "has no intent to return to live in Georgia." Dkt. No. 26, Ex. 3, ¶ 5. "Courts generally give little weight to a party's profession of domicile . . . because these declarations are often self-serving." Mollinos Valle, 633 F.3d at 1342. Jackson's self-serving statement is, however, corroborated by the balance of the evidence. Significantly, Jackson's divorce proceedings occurred before Alberto filed suit and concerned a different matter entirely; Jackson had no self-serving motivation to establish Florida as his domicile. This Court puts significant weight in Jackson's testimony in the divorce proceeding, which supports his assertion that he established citizenship in Florida by the time the instant lawsuit was filed.

Jackson testified in the divorce proceeding that he had begun seeing doctors in Jacksonville. Dkt. No. 40, 4:6. He had taken truck-driving jobs with Florida employers. Dkt. No. 40, 43:19-20. And, while he still maintained his bank account in Georgia, his testimony indicated that he did not use it for his daily expenses. Dkt. No. 40, 36:1-25. As of July 2011,

Jackson's former marital home was under foreclosure and about to be sold. In certain circumstances, residing at one's parent's house may indicate temporary refuge. However, Jackson paid rent and had manifested an intention to permanently tie himself to Florida.

Jackson's affidavit contains numerous other facts that confirm he had the requisite intent to create a new domicile when he moved to Florida. Jackson states that he has a Florida driver's license, that he receives his mail in Florida, that he owns no real estate in Georgia, and that he uses his Florida address for his federal income tax forms. Dkt. No. 44, Ex. 1. All evidence in the record supports Jackson's assertion that he had no intention of returning to Georgia after separating with his wife.

This Court concludes that Jackson, like Alberto, is a citizen of Florida. As a result, complete diversity does not exist and this Court lacks subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, Dkt. No. 26, is **GRANTED**. Defendants' Motions to Dismiss, Dkt. Nos. 17, 24, are **MOOT** as a result.

**SO ORDERED**, this 27th day of February, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)